IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SPEND LIFE WISELY COMPANY, INC., F/K/A DURANT BANCORP, INC., AN OKLAHOMA CORPORATION, AND FIRST UNITED BANK AND TRUST COMPANY, AN OKLAHOMA BANKING CORPORATION, <br><br> PLAINTIFFS, <br><br> V. <br><br> STEPHEN D. PHILLIPS, AN INDIVIDUAL, <br><br> DEFENDANT. | CASE NO.  22-cv-00509 |

## COMPLAINT

Plaintiffs, Spend Life Wisely Company, Inc., f/k/a Durant Bancorp, Inc. ("SLW"), an Oklahoma corporation, and First United Bank and Trust Company, an Oklahoma banking corporation ("First United") (collectively "Plaintiffs" or "First United"),[1] for their Complaint against Defendant, Stephen D. Phillips ("Phillips"), allege and state as follows:

### FACTUAL ALLEGATIONS

**Parties**

1.  SLW is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business in Durant, Oklahoma.

---

[1] First United is a wholly-owned subsidiary of SLW.  As a result, when Plaintiffs refer to First United in this Complaint, Plaintiffs are referring to both SLW and First United.

1

2. First United is a banking corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business in Durant, Oklahoma.

3. Stephen D. Phillips ("Phillips") is an individual who, upon information and belief, resides in McKinney, Texas.

**Jurisdiction and Venue**

4. This Court has jurisdiction over the parties to this action.

5. The jurisdiction of the Court over the subject matter of this action is predicated on diversity jurisdiction and proper under 28 U.S.C. § 1332, because the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs, and the claims asserted in this case are between citizens of different states.

6. Defendant resides in this judicial district, and all or a substantial part of the events giving rise to First United's asserted claims occurred in this judicial district. Venue is, therefore, proper in this Court, pursuant to 28 U.S.C. § 1391.

**SLW/First United**

7. First United is a community bank founded in Durant, Oklahoma. First United has grown its banking operations throughout Oklahoma and Texas and currently has approximately 85 locations.

8. First United offers a wide-range of cutting-edge banking products and services to its customers, including, but not limited to, savings and checking accounts, certificates of deposit, mortgages, home equity loans and lines of credit, auto and agriculture loans, SBA lending and builder finance and commercial loans.

9. First United's success in the highly-competitive, banking industry is based in large part on its ability to service and develop relationships with its customers. To meet its customers' banking expectations and needs, First United has developed and maintained, at great expense, valuable working relationships and substantial goodwill with its customers, both of which are of paramount significance to its business reputation and success.

10. Due to the competitive nature of First United's business, First United undertakes all reasonable efforts to shield its trade secrets and other confidential and proprietary business information from its competitors, *e.g.*, operating methodology, organizational structure, customer and prospective customer lists, customer and prospective customer products, information related to employees and customers, computer programs and systems documentation, etc. This confidential and proprietary information has independent economic value, both actual and potential, because it is not generally known or readily ascertainable to the public or competitors – First United considers this information a valuable trade secret. Indeed, First United's trade secrets and other confidential and proprietary information afford First United a competitive advantage over its competitors.

11. First United's trade secrets and other confidential and proprietary information are known only to select First United employees who require access to it to service First United's customers. All First United employees are informed of the sensitive nature of this information and directed not to disclose this information to other First United employees or third parties. First United further protects the secrecy and

confidentiality of its trade secrets and other confidential and proprietary information by: (a) implementing restrictive covenant agreements, as well as issuing and enforcing employee handbooks, which describe trade secrets and other confidential and proprietary information and impose non-disclosure obligations on the employees; and (b) maintaining trade secrets and other confidential and proprietary information on password protected computer systems with login procedures that restrict access to certain First United personnel.

12.     First United derives economic value from the secrecy of its trade secrets and other confidential and proprietary information. If disclosed to or used by a competitor, the competitor could unfairly compete with First United in the banking industry. For instance, the disclosure of First United's customer information would enable a competitor to target those customers and offer the same or similar products at a lower interest rate or service fee without having to spend the time, effort, expense and resources that First United expended in developing relationships with its customers. Under these circumstances, the economic value of First United's trade secrets and other confidential and proprietary information would be severely and irreparably damaged, if not completely lost, as would First United's competitive advantage in the banking industry.

### Phillips' Employment with First United

13.     On March 30, 2007, First United hired Phillips as a commercial lender at First United's corporate offices in Durant, Oklahoma. During Phillips' 14 years of employment with First United, he was promoted to various positions, and at the time of

his termination held the position of President of First United (being only the second president of First United in 25 years), which made him the most senior executive officer of the organization (junior only to the CEO) and a member of First United's executive leadership team.  Contemporaneously with Phillips' appointment as President of the organization, he was elected to the Board of Directors, which impressed upon Phillips a fiduciary duty to the organization.

14. As an officer and member of First United's executive leadership team, Phillips communicated with First United's customers and was exposed to trade secrets and other confidential and proprietary information relating to First United's customers, employees, suppliers, and business methods and practices.  More specifically, Phillips had access to First United's customer lists, customer information, customer specific banking products, personal employee information, marketing plans, etc.

15. Moreover, as an officer and member of First United's executive leadership team, First United provided Phillips the opportunity to purchase First United's stock. First United only allows key executives or directors of the bank, such as Phillips, to purchase stock.

16. On July 1, 2017, First United and Phillips entered into a Stock Purchase Agreement.  Given the highly-confidential nature of the information Phillips was granted access to, and as consideration for his opportunity to purchase First United's stock and his continued employment with First United, Phillips executed a Restrictive Covenant Agreement in conjunction with and ancillary to the Stock Purchase Agreement.

17.     In relevant part, the Restrictive Covenant Agreement prohibits Phillips from (1) using or disclosing First United's trade secrets and other confidential and proprietary business information for his benefit or the benefit of a third party following the end of his employment with First United; (2) competing with First United by gaining employment with any competitor within 100 miles of a First United location for a period of three years following the end of his employment with First United; and (3) soliciting any of First United's customers or employees for a period of five years following the end of his employment with First United.

18.     Phillips further agreed, among other things, that the Restrictive Covenant Agreement was necessary to protect First United's trade secrets and other confidential and proprietary business information and to preserve First United's customer and business relationships.

19.     On April 30, 2021, Phillips' employment with First United was terminated for cause, and First United and Phillips entered into a Severance Agreement which included a severance package that paid Phillips one year of his base salary—$496,100.16—as consideration for the promises and releases set forth therein.  Phillips' Severance Agreement further made clear that any violations of the Restrictive Covenant Agreement, *in the sole discretion of First United*, would require Phillips to immediately repay all of the monies and benefits he received pursuant to the Severance Agreement. Moreover, in connection with Phillips' termination, First United exercised its option to repurchase Phillips' First United stock for $7,131,817.32.

**Phillips' Wrongful and Unlawful Conduct**

20.     In or around May 2022, shortly after Phillips received the last of his $496,100.16 under the Severance Agreement, Phillips accepted employment with United Texas Bank in violation of the Restrictive Covenant Agreement.  Specifically, United Texas Bank is located within 100 miles of several First United locations and two years remain on Phillips' restrictive covenant prohibiting him from working for a competitor.

21.     Moreover, upon information and belief, Phillips has or intends to use and/or disclose First United's trade secrets and other confidential and proprietary business information for his benefit and the benefit of United Texas Bank in violation of the Restrictive Covenant Agreement—the very confidential information First United entrusted him with as a member of the Board of Directors, as President and as a member of the executive leadership team.  Namely, upon information and belief, Phillips has or intends to use customer and other information to unfairly compete with First United.

22.     Finally, upon information and belief, Phillips has or intends to solicit First United's customers in violation of the Restrictive Covenant Agreement.  That is, Phillips has or intends to contact First United's customers and offer them banking products or services that are the same or similar to the banking products and services currently provided by First United.

23.     Phillips' unlawful conduct has resulted in great financial harm to First United which is continuing as of the file-stamped date of this Complaint.

## FIRST CAUSE OF ACTION
## <u>BREACH OF CONTRACT</u>

24. First United adopts and incorporates by reference the allegations set forth in paragraphs 1-23 and the introductory statement in this Complaint.

25. Phillips entered into a valid and legally enforceable Restrictive Covenant Agreement.

26. In exchange for the contractual obligations set forth in the Restrictive Covenant Agreement, Phillips received adequate and sufficient consideration, including, but not limited to, the opportunity to purchase First United stock pursuant to the Stock Purchase Agreement, continued and future access to First United's trade secrets and other confidential and proprietary business information and continued employment with First United as a shareholder, officer and member of executive leadership.

27. First United has at all times performed and fulfilled its obligations under the Restrictive Covenant Agreement.

28. The Restrictive Covenant Agreement is ancillary to another binding and enforceable agreement (the Stock Purchase Agreement), is reasonably tailored with respect to its geographical and temporal scope and restrictions and is reasonably necessary to protect First United's legitimate business interests, including First United's goodwill, trade secrets and other confidential and proprietary business information, and its customer relationships.

29. As set forth herein, Phillips has breached the Restrictive Covenant Agreement with First United.

30. The foregoing wrongful and unlawful conduct has caused damage and injury to First United.

## SECOND CAUSE OF ACTION
## DECLARATORY JUDGMENT

31. First United adopts and incorporates by reference the allegations set forth in paragraphs 1-30 and the introductory statement in this Complaint.

32. Phillips entered into a valid and legally enforceable Restrictive Covenant Agreement.

33. A dispute currently exists between Phillips and Plaintiffs regarding the interpretative and governing effect of the terms "Non-Competition Period" and "Non-Competition" in the Restrictive Covenant Agreement.

34. Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202, First United respectfully requests the Court to declare that (i) the term of the "Non-Competition Period", as defined in the Restrictive Covenant Agreement, has not expired, and (ii) the "Non-Competition" provision in the Restrictive Covenant Agreement remains in full force and effect for a period of three (3) years following Phillips' termination from his employment with First United on April 30, 2021.

## PRAYER

Accordingly, Plaintiffs respectfully requests that they be awarded an *in personam* judgment against Phillips, providing as follows:

A.  As to Count I, for damages against Phillips in an amount to be determined at trial, but in excess of $75,000.00 for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332;

B.  As to Count II, for a declaration from the Court that that (i) the term of the "Non-Competition Period", as defined in the Restrictive Covenant Agreement, has not expired, and (ii) the "Non-Competition" provision in the Restrictive Covenant Agreement remains in full force and effect for a period of three years following Phillips' termination from his employment with First United on April 30, 2021;

C.  An award for post-judgment interest at the maximum rate of interest permitted by law;

D.  An award for Plaintiffs' attorney fees and costs of suit; and

E.  An award for such other relief to which Plaintiffs deemed entitled under the presented facts and circumstances.

Respectfully submitted,

s/ Christopher M. Staine
Christopher M. Staine
State Bar No. 24104576
CROWE & DUNLEVY
A Professional Corporation
2525 McKinnon Street, Suite 425
Dallas, TX 75201
(214) 420-2163
(214) 736-1762 (Facsimile)
christopher.staine@crowedunlevy.com
ATTORNEYS FOR PLAINTIFFS